UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BANK OF LOUISIANA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 02-0236** |
| **AETNA US HEALTHCARE, INC., AETNA LIFE INSURANCE COMPANY, AND AETNA INSURANCE COMPANY OF CONNECTICUT** | **SECTION: "C" (5)** |

## ORDER AND REASONS

Before the Court are cross motions for summary judgment,[1] filed by the plaintiff, Bank of Louisiana ("Bank") (Rec. Doc. 209), and the defendants, Aetna US Healthcare, Inc., Aetna Life Insurance Company, and Aetna Insurance Company of Connecticut (collectively, "the Defendants") (Rec. Doc. 210). Having considered the memoranda and arguments of counsel, the record, and the applicable law, the Court decides the motions as follows.

---

[1] The Court notes the Defendants' assertions that they are not moving for summary judgment, but have moved for "judgment on the stipulated facts and uncontested material facts." Rec. Doc. 229, n. 1. The Court construes the Defendants motion as one for summary judgment because the Court is not aware of any Rule of Civil Procedure allowing for a pre-trial judgment on stipulated facts.

1

**I. BACKGROUND**

As previously described by the Court, the Bank filed suit against the Defendants seeking reimbursement for employee healthcare benefits pursuant to an insurance policy between the parties. (Rec. Doc. 74). In 1995, the Bank purchased an insurance policy from Aetna Casualty Company[2] ("Aetna Casualty") to limit the costs associated with the Bank's employee health insurance program. Rec. Doc. 208, Joint Statement of Stipulated Facts. The Bank maintained a self-insured benefit program and obtained the Aetna Casualty policy to limit the Bank's liability in any given policy year. *Id.* The Aetna Casualty policy limited the Bank's liability for individual claims and set a total, or aggregate amount, capping the Bank's exposure.[3] *Id.* By separate agreement, Aetna Life Insurance Company ("ALIC") administered the group health plan.[4]

In mid-2000, Aetna Casualty stated that it would no longer provide stop-loss coverage to the Bank, but offered the Bank new "fully insured" coverage. Rec. Doc. 208, Joint Statement of Stipulated Facts. The Bank and ALIC conducted several meetings to discuss the Bank's liability during the conversion from the stop-loss policy to the fully insured policy. *Id.* Based on oral representations by Stacy McMahon ("McMahon"), an ALIC representative, the Bank decided to purchase extension coverage under the existing contract with Aetna Casualty. *Id.*

In a letter dated December 1, 2000, the Bank formally exercised the extension option,

---

[2] Aetna Casualty Company is now known as Aetna Insurance Company of Connecticut.

[3] The "Individual Stop Loss Amount" was capped at $50,000 per claim; the "Aggregate Stop Loss Amount" was calculated based on the number of employees, and initially set at $618,127.45 for policy year 2000. Rec. Doc. 208, Joint Statement of Stipulated Facts.

[4] The Bank entered into Administrative Services Contract No. ASC-605397 with ALIC. Rec. Doc. 208, Joint Statement of Stipulated Facts.

sending a check for $36,132.78 to satisfy the premium for the tail coverage. *Id.* Subsequently, McMahon sent a letter to the Bank, dated December 28, 2000, stating:

> Per your request, this is confirmation that the Bank of Louisiana met the Aggregate Stop Loss limit for the 2000 contract year. According to your contract with us, the bank will have no additional claim liability for 2000 and no additional fund transfers will be requested. Beginning January 1, 2001, your runoff period will begin, at which time the monthly budgeting feature will no longer exist. We will start wiring your account for claims paid during the runoff period and you will be reimbursed at year-end.[5]

The Joint Statement of Stipulated Facts ("Stipulated Facts") notes that McMahon's letter was sent after the Bank exercised the extension option. Rec. Doc. 208, Joint Statement of Stipulated Facts. In addition, the Stipulated Facts outline the Aggregate Stop Loss amount for policy year 2000 and the Aggregate Stop Loss amount following the Bank's purchase of the three month extension. The calculations in the Stipulated Facts demonstrate that the Defendants are owed $55,401.22; however, the Stipulations also note a November 11, 2001 letter from McMahon asserting, "Aetna, Inc. has agreed not to pursue the outstanding balance of $59,700." Rec. Doc. 208. In addition, the Defendants state that they are not pursuing recoupment of the alleged overpayment as a "business accommodation." Rec. Doc. 229, p. 2.

The Bank alleged four state law causes of action in its complaint: (1) misrepresentation; (2) detrimental reliance; (3) breach of contract; and (4) breach of fiduciary duty. *Id*. at p. 2. On May 20, 2003, the Court determined that the Bank's claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Rec. Doc. 74, p. 5-8. The Bank appealed, and the Fifth Circuit remanded the matter for further consideration. Specifically, the Fifth

---

[5] Rec. Doc. 208, "Joint Statement of Stipulated Facts" discusses the fact that McMahon sent the letter on December 28, 2000; the letter itself may be found as "Attachment A" to Rec. Doc. 1.

3

Circuit ruled that part of the Bank's state law claims survived ERISA preemption:

> The only claim to implicate Aetna's fiduciary relationship with the Bank is the Bank's claim that Aetna breached the stop-loss extension by failing to reimburse the Bank for claims that Aetna delayed processing and paying and, hence, that were not paid during the extension period. Accordingly, Aetna has established the second element of its preemption defense only as to this latter claim.

*Bank of Louisiana v. Aetna US Healthcare Inc.*, 468 F.3d 237, 244 (5th Cir. 2006). In addition, the Fifth Circuit stated, "the Bank's breach of contract claim, to the extent it is premised on Aetna's alleged delaying the processing of claims, is preempted." *Id*. at n. 13.

Following the Fifth Circuit's remand of this matter, the Court requested that the parties submit memoranda to identify the Bank's surviving claims and suggest an appropriate disposition of the case. Rec. Doc. 148 (stating, "[t]he viability of each specific claim against each specific defendant for each of the relevant time periods shall be addressed. If either party contends that a claim is established or is subject to dismissal as a matter of law based on the Fifth Circuit opinion or undisputed facts, an appropriate motion for summary judgment shall be filed."). The parties have now submitted cross-motions for summary judgment.

The Bank asserts that it is entitled to $102,720.06 for the three month period from January 1, 2001 through March 31, 2001 based on the portion of its breach of contract claim that was not preempted by ERISA. In addition, the Bank seeks $168,908.32 to reimburse the costs incurred in 2000, but not paid until after March 31, 2001 based on its detrimental reliance and negligent misrepresentation claims. Finally, the Bank requests attorney's fees pursuant to the insurance contract.

In opposition, the Defendants draw a distinction between the multiple Aetna entities: (1) Aetna Casualty Company, now known as Aetna Insurance Company of Connecticut, and (2)

Aetna Life Insurance Company d/b/a Aetna U.S. Healthcare. In addition to the separation of the Aetna entities argument, the Defendants assert: (1) the Bank's claims for delay in processing claims are preempted by ERISA; (2) Aetna Casualty did not breach the Stop Loss Policy; (3) The Bank's claims for detrimental reliance and negligent misrepresentation fail because the alleged misrepresentations were made by Stacy McMahon, when she was employed by Aetna Life Insurance Company ("ALIC");[6] (4) the Bank's claims against ALIC are non-contractual; (5) the Bank did not rely on any representations by Stacy McMahon in purchasing the Stop Loss Extension.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

---

[6] Essentially, the Defendants argue that Stacy McMahon, as an employee and agent of Aetna Life Insurance Company, cannot be responsible for any misrepresentations because she did not work for the Aetna entity, Aetna Casualty Company (aka: Aetna Insurance Company of Connecticut), that contracted with the Bank to provide the three month extension policy.

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

The "initial burden" imposed on the moving party has two parts: the burden of production and the ultimate burden of persuasion. *Celotex Corp.*, 477 U.S. at 330. The manner in which the moving party may satisfy the burden of production "depends upon which party will bear the burden of persuasion on the challenged claim at trial." *Id.* at 331. In this case, the Bank will have the burden of persuasion at trial to show that it is entitled to recover under the insurance policy.[7] Thus, the Bank must initially demonstrate an absence of genuine issues of

---

[7] The contract between the Bank and Aetna Casualty Company is controlled by Louisiana law because the choice of law provision states, "This policy will be construed in accordance with the law of the jurisdiction in which it was delivered." Rec. Doc. 149-3, Exhibit A, "Contractual Liability Insurance Policy", p. 1. The Court notes that "delivered" is a term of art in the insurance industry, and is interpreted to mean the clients/purchasers location. *See e.g., McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957) (noting "[t]he contract was **delivered** in California, the premiums were mailed from there and the insured was a resident of that State when he died.") (emphasis added).

Under Louisiana law, "the burden in an action on an insurance contract is on [the] plaintiff to establish every fact in issue which is essential to his cause of action or right of recovery, including existence of policy sued on, its terms and provisions, and that his claim is within its coverage. *B.T.U. Insulators, Inc. v. Maryland Casualty Co.*, 175 So.2d 899, 902

material fact regarding its claims against the Defendants to succeed on its summary judgment motion.  *Celotex Corp.*, 477 U.S. at 331.

### III. LAW & ANALYSIS

**1. Breach of Contract Claim**

The Fifth Circuit has interpreted Louisiana law to hold that the interpretation of an unambiguous contract is an issue of law subject to *de novo* review *Rutgers, State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992).  The Louisiana Civil Code states, "[w]hen the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code Ann. art. 2046. "[A] contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Legier and Materne v. Great Plains Software, Inc.*, 2005 WL 1431666, at *3 (E.D.La. 2005) (citing *Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir.1996)).  However, "a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Lloyds of London*, 101 F.3d at 429.

In this case, the text of the contract states:

Aetna will indemnify insured for Contractual Losses paid during a policy year, which are in excess of:
    a) the Aggregate Stop Loss Amount; and
    b) the Individual Stop Loss Amount for any one Participant.
Aetna will pay the Insured for the amount of such excess Contractual Losses.
Such payments are hereafter called stop loss payments.

---

(La.App. 2d Cir. 1965).

> . . . .
>
> "Contractual Losses" means the Benefits paid to or on behalf of Participants by the Insured under the Contract;
>
> . . . .
>
> A "policy year" shall coincide with a contract year under the Contract; except that the first policy year shall commence on the Effective Date of this policy and the last policy year shall ind on termination of this policy.

Rec. Doc. 149, Exhibit A, p. 2-4. In addition, the three month "Extension of Benefits Option" provided coverage as follows:

> Aetna will indemnify the Insured for Contractual Losses in excess of the applicable Aggregate and Individual Stop Loss Amounts with respect to claims **incurred** under the Plan by Participants during the contract year immediately prior to termination of the Contract **and** for which **Benefits are paid** during the 3 month period following termination of the Contract.

Rec. Doc. 149, Exhibit A, p. 6 (emphasis added).

In *Certain Interested Underwriters at Lloyds v. Gulf Nat'l Ins. Co.*, 898 F.Supp. 381 (N.D.Miss. 1995), the court considered contract language similar to the contract in this case. In *Gulf Nat'l*, the Tupelo School District funded a self-insured medical plan, and the school district limited its risk through an excess loss indemnity policy from Gulf National. *Gulf Nat'l*, 898 F.Supp at 383. The policy between Tupelo School District and Gulf National provided coverage for costs above $30,000 per participant, and aggregate coverage for losses exceeding $554,396. The relevant policy language stated:

> The Company will pay you a percentage of the amount by which the specific losses you have paid under your Employee Benefit Plan exceed the specific deductible amount stated in your Schedule of Insurance [$30,000].
>
> Specific losses means the total amount of money *you have actually paid during your policy period* to, or on behalf of, any one person covered under your Employee Benefit Plan. Such payments must have been made for covered

> expenses which were incurred after the effective date of your policy, or during the
> 12 month period immediately prior to such effective date.

*Gulf Nat'l*, 898 F.Supp at 383-84 (emphasis in original). Similar to the Defendants' argument in this case, Gulf National "asserted that because Tupelo did not pay the claims within the policy period, Gulf was relieved of any duty to reimburse Tupelo." *Id.* at 384. The court noted that the dispute between Gulf National and Tupelo was "whether liability under the policy arose on a 'claims paid' or a 'claims incurred' basis . . . Tupelo contends that it was unaware of its need to actually pay the claims within the policy period, and that a more reasonable interpretation is that the policy merely required the claim to be incurred during the coverage period." *Id.* The *Gulf Nat'l* court concluded that the policy was unambiguous and "clearly state[d] that claims must have been paid during the policy period to qualify for reimbursement." *Id.* at 385.

In this case, the contract language states that Aetna Casualty will indemnify the Bank for "Contractual Losses" paid during a policy year. Rec. Doc. 149-3, Exhibit A, p. 3. "Contractual Losses" are defined as "Benefits paid" by the Bank; "Benefits" are "payments made pursuant to the Plan . . . a Benefit is considered paid only when the payment draft has cleared the bank on which it is drawn." *Id.* The Court finds that the contract terms are clear, explicit, and lead to no absurd consequences; therefore, the contract is not ambiguous pursuant to Louisiana law. La. Civ.Code Ann. art. 2046. Accordingly, the Court must determine whether Aetna Casualty failed to reimburse the Bank for funds *actually paid* by the Bank on behalf of plan participants during "a policy year" or during the three month "extension period."

The Joint Stipulation contains calculations demonstrating that the Bank has been over-

reimbursed by $55,401.22.[8] However, the Defendants state that they are not seeking to recoup the overpayment as a "business accommodation." Rec. Doc. 229, p. 2. In contrast, the Bank's Motion for Summary Judgment is accompanied by a "Statement of Uncontested Material Facts" asserting that the Bank is owed $102,720.06 for claims incurred during the policy year and actually paid during the three month extension. Rec. Doc. 209, Statement of Uncontested Material Facts, p. 3.[9]

Again, the Court finds that the contract unambiguously entitles the Bank to reimbursement for claims actually paid during the three (3) month runoff period. Because the Joint Stipulation reflects that the Bank was in effect reimbursed for claims actually paid during the three month run-off period, the Court finds that the Defendants did not breach the contract. The Joint Stipulation demonstrates that the total amount of claims paid during policy year 2000 plus the three month extension was $807,912.[10] In addition, the Aggregate Stop Loss amount, including the three month extension coverage, was $767,490.67. Therefore, the Defendants owed the Bank the amount that the claims exceeded the stop-loss amount, or $40,421.33. However, the Joint Stipulation notes that the Defendants had already reimbursed the Bank

---

[8] The Court notes that the Bank objected to the calculations in the Joint Stipulations showing the over-reimbursement on grounds of relevance. The Bank's relevance objection is denied because the calculations provide evidence that the Defendants fulfilled their duties under the insurance policy.

[9] $102,720.06 represents the sum of the claims listed in Uncontested Material Fact No. 15 from January 18, 2001 through March 19, 2001. The Bank is not entitled to collect on the remaining claims listed because they were paid beyond the three month extension period.

[10] $807,912 is the sum of the $713,950.00 paid during 2000 and the $93,962.00 during the three month extension coverage. Thus, the $102,720.06 claimed by the Bank is included in the $807,912 figure. The Defendants note that only $93,962.00 was paid during the three month run-off as opposed to the Bank's claimed $102,720.06 because of an $8,758.12 credit. Rec. Doc. 229, p. 2.

$95,822.55 for claims paid during policy year 2000.  Rec. Doc. 208, Joint Statement of Stipulated Facts.  The result is that the Bank was over-reimbursed for claims actually paid during policy year 2000, including the claims actually paid during the three month run-off.  Therefore, the Defendants did not breach the agreement, and Bank is not entitled to summary judgment regarding its claim for $102,720.06.

### 2. The Bank's Detrimental Reliance Claim

The Fifth Circuit recently discussed the elements of a prima facie case for detrimental reliance under Louisiana law:

> It is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana. *May v. Harris Management Corp*., 04-2657 (La.App. 1st Cir.12/22/05), 928 So.2d 140, 145; *Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La.1975); *Barnett v. Bd. of Tr. for State Coll. & Univs*., 00-1041 (La.App. 1st Cir.6/22/01), 809 So.2d 184, 189. Detrimental reliance claims must be examined carefully and strictly. *May*, 928 So.2d at 145 (citing *Kibbe v. Lege*, 604 So.2d 1366, 1370 (La.App. 3d Cir.1992)). The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. *Id.* (citing *Suire v. Lafayette City-Parish Consol. Government*, 04-1459 (La.4/12/05), 907 So.2d 37, 58-59).
>
> To establish detrimental reliance, a party must prove the following by a preponderance of the evidence: (1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance. *Suire*, 907 So.2d at 59.

*In re Ark-La-Tex Timber Co., Inc*., 482 F.3d 319, 334 (5th Cir. 2007).

In this case, the Bank cannot establish a prima facie detrimental reliance claim because the Bank did not change its position in reliance on McMahon's December 28, 2000 letter.  The Bank claims that "reliance on [McMahon's] December 28th, 2000 [was] reasonable as a matter of

law" because McMahon was authorized to make the representations contained in the letter.[11] However, the Stipulated Facts demonstrate that the Bank exercised its option to purchase the tail coverage on December 1, 2000. Thus, the Bank changed its position before it received McMahon's letter. Stated another way, there is no genuine issue of material fact regarding the timeline of events: the Bank purchased the extension coverage and then received McMahon's letter. Because the letter post-dates the Bank's decision to purchase the extension, it was not possible for the Bank to rely on McMahon's letter at the time it decided to purchase the extension coverage.[12]

Moreover, the parol evidence rule bars the admissibility of McMahon's oral statements made prior to the time that the Bank purchased the "tail coverage." In *Condrey v. SunTrust Bank of Georgia*, the Fifth Circuit held that the parol evidence rule bars claims of detrimental reliance when a merger clause creates a fully integrated agreement. 429 F.3d 556, 565-66 (5th Cir. 2005) (stating "having determined that parol evidence is inadmissible, we also determine that the doctrine of detrimental reliance does not apply."). As a preliminary matter, the *Condrey* court determined that Louisiana law precludes the admissibility of even contemporaneous oral statements when a contract is fully integrated. *Id.* at 564. Specifically, the Fifth Circuit found that "Louisiana law bars parol evidence . . . where the contract is unambiguous and where a merger clause confirms the intent of the parties that the contract be a fully integrated document." *Id.* at 566. Because the contract was unambiguous and fully integrated, the Fifth Circuit

---

[11] Rec. Doc. 209, p. 4.

[12] The fact that the Bank later relied on McMahon's letter to interpret its contract with the Defendants is not material to the detrimental reliance claim.

reasoned that evidence of oral statements to support a claim for detrimental reliance were not admissible. *Id.* at 566.

As discussed above, the Court has already determined that the contract between the Bank and the Defendants is unambiguous. In addition, the Court notes that the agreement contained a "Modification of Policy" clause stating, "[t]his policy and the application attached hereto constitute the entire contract. Changes in this policy may be made by written mutual agreement between Aetna and Insured." Rec. Doc. 149-3, Exhibit A, p. 5. Therefore, the Court concludes that the agreement is fully integrated, and that the *Condrey* holding is applicable to this case. Because *Condrey* precludes the admissibility of oral statements to support a claim of detrimental reliance, the Bank cannot maintain its detrimental reliance claim based on McMahon's statements, even if the statements were made contemporaneously with the Bank's decision to purchase the "tail coverage." Consequently, summary judgment must be entered in favor of the Defendants on this claim.

### 3. The Bank's Negligent Misrepresentation Claim

A prima facie negligent misrepresentation claim in Louisiana must state: (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation. *Kadlec Medical Center v. Lakeview Anesthesia Associates*, 527 F.3d 412, 418 (5th Cir. 2008) (citing *Brown v. Forest Oil Corp.*, 29 F.3d 966, 969 (5th Cir. 1994); *In re Ward*, 894 F.2d 771, 776 (5th Cir. 1990); *Pastor v. Lafayette Bldg. Ass'n*, 567 So.2d 793, 796 (La.Ct.App. 1990); *Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co.*, 525 So.2d 1157,

1162 (La.Ct.App. 1988)).

Similar to the analysis above, it is not possible for the Bank to maintain its misrepresentation claim against the Defendants based on the December 28, 2000 letter. Again, McMahon's letter, the alleged misrepresentation, occurred after the Bank purchased the extension coverage. The Bank could not have relied, reasonably or otherwise, on a December 28, 2000 letter to make a decision on December 1, 2000. Additionally, the *Condrey* analysis precludes the admissibility of the Bank's reliance on any of McMahon's oral statements prior to, or contemporaneously with, the Bank's purchase of the "tail coverage." The Court concludes that summary judgment in favor of the Defendants is compelled on this claim.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Bank's Motion for Summary Judgment is DENIED (Rec. Doc. 209).

IT IS FURTHER ORDERED that the Defendants' Motion for Judgment on the Stipulated Facts and Uncontested Material Facts is GRANTED (Rec. Doc. 210). Judgment shall be entered accordingly.

New Orleans, Louisiana, this 31st day of July, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE